The Appellate Court of Illinois is reconvened. Thank you. Good morning. Please be seated. This case is case number 4-160-229 MacDonald v. MacDonald for the appellant, Bruce Lyman, for the Appellee, Madison Mulledy-Winter. Is that correct? Yes, correct. Ms. Lyman, you may proceed. If I could have five minutes on rebuttal, please. May it please the Court, counsel. My name is Ruth Lyman. I represent the appellants, James Matthew MacDonald, who is referred to as Matt, and his wife, Alyssa MacDonald. There is no question in this case whether abuse or harassment occurred. In fact, the trial court, the trial judge, found that abuse had occurred, stating, and I've got this as his oral ruling, looking at page A4 in the appendix, if this petition had been brought at about that time, referring to February or so of 2014 rather than summer of 2015, I think that would have constituted abuse that would have allowed me or caused me to grant the petition. So the court, the judge, finds that there was abuse. Later on talks about also that there was harassment by Deanna. So is your argument that the trial court erred in not considering the events of February 2014? Yes, that is part of it. The court, what Matt explained, what the testimony was and the evidence was, is that Deanna MacDonald went through these cycles of abuse. He had lived with her, I think it was a 17 or 20 year marriage, and had been the subject of repeated and almost daily physical, emotional and psychological abuse by her. He stayed in that marriage with the children until he couldn't bear it any longer. And despite leaving that marriage and asking for and receiving a divorce, she continued to torment him. And not just with emotional abuse, but as the court noted and as the testimony showed, that it was abuse that included multiple threats to kill him that she did not deny and that other people heard as well. A voicemail left on his father's answering machine around this time also saying, if you don't shut Matt up, I'm going to shut him up for you. Which Matt MacDonald's father understood to mean that she would kill him, as she had already multiple times, two separate times threatened to kill him. She had thrown one of those license plates, metal license plates, directly at him, overhanded from one and a half feet away. Luckily she missed. But that is among the physical abuse. And then the court found also that there had been harassment. Looking at page A5 in the appendix, the trial court notes there's also harassment and the court has to determine whether or not it constitutes harassment. He calls it a close call, but notes that harassment being conduct which is not necessary to accomplish a reasonable purpose. And then says, I don't think any of the conduct was necessary to accomplish a reasonable purpose. And then goes through his mind, part of it, of course, noting that here's a firefighter, so I don't understand really why a brave firefighter would be fearful of his ex-wife. And certainly the issue of gender and sex are in there, despite the Illinois Domestic Violence Act, clearly noting that domestic violence happens every day in every community in our state. The victims are individuals from all backgrounds, ages, and cultures, irrespective of marital status, religion, race, ethnicity, education, gender, or sexual identity. And recognizes that. But the trial court clearly has trouble trying to get its head around the fact that a man, especially a firefighter who saves people's lives on a daily basis, would have fear. But he clearly does and recognizes that Matt has emotional, that what Deanna has done has caused emotional distress to him. He takes medications to try and alleviate that. But there's clearly the harassment has occurred against him. The abuse has occurred. And what the trial court seems to have missed when it denied the order of in cycles. As you probably hear and would note in other domestic violence cases as well. We have the spring of 2014 events where Deanna on multiple times threatens to kill Matt, throws a license plate at him, lunges at him, makes these statements. Then we have, there's continued actions that is testified to over the three days. And then in the summer of 2015, Matt is now engaged to Alyssa, his fiance. And that's when Deanna comes onto the property at Matt and Alyssa's house. Lunges at her, at Alyssa, at Matt, at Alyssa's mother, all of them who are at the door. While Deanna has come there uninvited and is then calling Alyssa names, you whore, you slut. But is then clearly lunging at all three of them. So we have then summer 2015. So this stuff isn't going away. Matt is now engaged to Alyssa, going to get married in August. And he recognizes that she is on this upward swing and upward cycle. So he asks for the next month, July, files a verified petition for order of protection. The court denies that emergency order of protection request. But it's clear that this is part of, again, part of the cycle. And the court says again, that if he had done it back in February or March of 2014, I would have granted it. And that's what he says. But since it's been a little bit more and these other things haven't been his ban, true, she hasn't threatened to kill him. She hasn't thrown large metal objects at him in the last several months. But she continues to lunge at him. Her behavior continues to be abusive, continues to be harassment. But the court, despite having found that abuse had occurred and despite noting this harassment, says that he, it's a close call, but he's going to deny it. That denial was unreasonable, arbitrary, and not based on the evidence. Not even based on his own finding. Somehow he just can't get around that issue. Again, that there's a firefighter who's asking for this. And then he goes on to say that this is, the issue is, he's not persuaded, and this is at A7, that it caused, these actions by Deanna caused a And of course, that's not the language of the Illinois Domestic Violence Act, and has not been. It is not a reasonable person under normal circumstances' emotional distress. It is whether it caused a reasonable person emotional distress. Now, the court already found and noted in its ruling that it did cause Matt reasonable, it did cause him emotional distress, severe emotional distress. And there was testimony about all of the things that occurred to him when he has contacted, when Deanna contacts him. But the court, in making this ruling, and finding that it has to be under normal circumstances, is outside of the court's statutory authority as well. What we have is findings and clear evidence that Deanna, throughout their marriage, and since their marriage, and even more so, and repeatedly, since Matt and Alyssa got engaged, has engaged in a pattern and a practice of continued and escalating acts of domestic violence against Matt. And while someone might say, well, just stop going around Deanna, or stop doing this, but she follows him. And they have children in common, and so sometimes there are contacts that she creates in an effort to continue to harass him, and to continue to keep him, to be able to continue in her abuse of him, and her threats and intimidation of him, which have led to the fact that Deanna would be eligible for an order of protection against Deanna. The court in Benjamin v. McKinnon had found out of this district that there was family members by affinity. So Matt and Deanna were married. Matt divorced Deanna. They have three children together. Matt became engaged to Alyssa, and after they married in August of 2015, then there was an amended petition for order of protection asking that Alyssa also be granted that as a family member. Through the relationship of affinity as a family member, she has now children, stepchildren in common with Deanna. And her family member, her husband, is a former spouse of Deanna McDonald, and should also be eligible for an order of protection based on, again, the various acts, the harassment, repeated harassment. Not only do we have Deanna following Alyssa into a bathroom, not to use the restroom at one of the children's basketball games, but simply to intimidate her, to make physical contact with her, which she didn't. Deanna didn't deny any of that, and as a way to harass her. We then have, additionally, in the summer of 2015 in June, a month before Matt filed the petition for order of protection, Deanna coming onto the property and lunging straight at Matt, Alyssa, and Alyssa's house, and calling and screaming at Alyssa while red-faced, hands clenched, lunging and calling her a slut and a whore, onto their property and onto their porch. There is clear evidence in the trial court's ruling denying the petition for an order of protection was against the manifest weight of the evidence, and the court, as I noted, the court found that there was abuse, found that there was harassment, but simply denied it because, oh, he didn't file it soon enough. Abuse doesn't go away. If abuse has occurred, it is likely to occur again, and that's part of what the Illinois Domestic Violence Act has taught us and recognizes, is that this is a problem and is not something to be swept away, and is not something that just happens to women, and is not something that just happens in certain areas. It happens throughout the state, and it needs to be stopped. And the trial court, in denying that petition for order of protection, despite the more than preponderance of the evidence showing abuse and harassment, his ruling was against the manifest weight of the evidence. Okay, thank you. You'll have rebuttal if you so desire. You may proceed. My name is Madison Malady Winter, and I represent the respondent, Appalachiana Lynn Helms McDonald, in this case. Your Honor, the Illinois Domestic Violence Act has listed specific relationships in which people have standing under the Illinois Domestic Violence Act to petition the court for an order of protection. Those relationships include family and household members, including those individuals related by present or prior marriage. Deanna McDonald and Alyssa McDonald simply do not fall into any of those categories. Deanna McDonald is the current spouse. This court tested in Benjamin v. McKinnon just how far family relationships go to qualify an individual for standing under the Illinois Domestic Violence Act. And this court found that relationships through affinity remained, the individuals related through affinity were still eligible under the Domestic Violence Act. Or a former mother-in-law had just as much standing as a current mother-in-law under the Illinois Domestic Violence Act to petition the court for an order of protection. The difference between the parties in Benjamin v. McKinnon and Alyssa and Deanna McDonald is that Alyssa and Deanna McDonald have never been related through marriage. They are simply the current and former spouse of an individual, being Matt McDonald. The relationship between current and former spouses of an individual is very contentious. Currently, parties that have this connection are limited to petitioning the courts for a stalking no-contact order, which requires two or more acts of abuse and is generally more onerous to get. If the court extends the relationship under the Illinois Domestic Violence Act to where a current and former spouse of an individual can apply under the Illinois Domestic Violence Act for a petition, petition the court for an order of protection, this would increase the litigation in the trial courts because these individuals would now have another avenue to apply for protection. The appellate court should also affirm the finding that Mr. McDonald did not meet the burden of proof to show by the preponderance of the evidence that he was abused by Deanna McDonald. As a member of the household, isn't she a protected person under the act? She's a member of Matt McDonald's household, but not of Deanna McDonald's household. As a member of a household of an abused person, if the court found that Matt was abused as a member of the household, wouldn't she have standing to seek an order of protection herself? I believe she would be covered under Mr. McDonald's order of protection. The trial court's finding that Mr. McDonald was not abused by Deanna McDonald should also be attributed to harassment. Harassment, as was stated by Ms. Wyman, is knowing conduct not necessary to accomplish a reasonable purpose. And this conduct must be such that it would cause a reasonable person emotional distress and did in fact cause the petitioner emotional distress. The court considered events that occurred in 2014 and 2015. As to the events that occurred in 2014, the court found that these events did not cause the petitioner emotional distress because he did not file at that time and he also did not list the events of 2014 specifically in his petition for order of protection or amended verified petition for order of protection. He spoke of different things in the past generally, but did not list out the events that Ms. Wyman has illustrated before the court today. Based on these things, the fact that they weren't even mentioned in his petition for order of protection or amended petition, and the fact that he didn't file an order... Well, are you saying they should not have been admitted, those other events, or they just have little weight? They have little weight. But you're not disputing that that evidence was still admissible even though it wasn't specifically planned, right? That's correct, Your Honor. It was still admissible, however the court didn't assign it very much weight because the court didn't find it to be very important to Mr. McDonald, otherwise he would have mentioned it in his petition for order of protection and his amended petition for order of protection. And in 2014, the parties were undergoing a contentious divorce. There were additional events that occurred in 2015 about the time that the parties were re-entering into litigation to modify a parenting plan that had been entered. The trial court considered these events, which were the ones that were listed in the petition for order of protection and the verified petition for order of protection, emotional distress. They wouldn't have caused the reasonable person emotional distress. One of the events complained of by the petitioner was that the respondent took a photograph of the children at a basketball game that all the parties attended. The court found that that would not cause an individual taking a picture of their own children should not cause a reasonable person emotional distress. In the trial... Now this was, as was stated, a case that lasted for three days and continued over three months from December 22nd to March 22nd. Those three days occurred over a three month time period. The court issued its opinion in this matter from the bench and was a rather lengthy opinion because there were other issues that were before the court. And four times in the court's opinion it stated the elements of harassment. The first three times they were verbatim from the statute. And in the fourth time that the court stated the elements of harassment, it added three words, under normal circumstances. Again, this was after three days of trial. The court said that it was not convinced that a reasonable person under normal circumstances would have been caused emotional distress. After stating the element without those three words, three separate times. The standard in this case, as the court well knows, is the manifest weight of the evidence. The trial court listened over three days of trial, over a dozen witnesses. Hundreds of pages of trial testimony were generated. And they listened to various accounts of the events complained of by the petitioner. The petitioner had his parents, his Alyssa, Deanna, all testified to different events. And their accounts, as they will often with eyewitnesses accounts, differed. So the court who was in the best position to evaluate the credibility of witnesses, granted the assigned weight to the events that occurred. And found that the petitioner had not met his burden to establish by the preponderance of the evidence that harassment had occurred. I don't have to answer any questions the court may have. Did Deanna deny any of those events occurred? She denied the events, Your Honor. And then she also had different testimony relating to the events that occurred. In some of the events, one party would testify that certain people were present. Another party would testify that other people were present. And sometimes a third party would testify different people were present over these three days of trial. There would be differences in the testimony as to how close to the house Deanna got. But those sound like details. But the actual fact that she went to the house or that she threw the license plate, she didn't deny those, did she? She did not, Your Honor. Thank you very much. Do you have any rebuttal? Just briefly. Okay, thanks. As the court questioned and I think the answer clarified, there may have been small accounts or differences in details as far as how far away people were, but there was no denial of the abuse, no contrary evidence that Deanna had not abused Matt repeatedly throughout the marriage, that she had not threatened to use her father's answering machine telling him she would shut Matt up. There wasn't any denial that she had thrown the license plate, that she had lunged at Matt and Alyssa and his mother on their property, on Matt and Alyssa's property, on their porch at all. There wasn't any of that denial. That abuse, that evidence was uncontradicted. The suggestion that there was, let's see, oh, that there were photographs that Matt didn't like, that there were photographs that Deanna took of the children. It wasn't that Deanna was taking photographs of the children at the basketball game. It's that Matt and Alyssa were up on one side of the stadium and Deanna turned around and took those pictures. That in itself is not a huge deal. If that were the only issue, there would be no question that there shouldn't be an order of protection. But there were multiple events, escalating events from following Alyssa into the bathroom, not to use it, but to make physical contact and verbal contact with her and intimidate her. There was the repeated acts of contact and harassment that Deanna made of Matt. And as a reasonable person, now she's had physical abuse from his spouse for years and years. And now he's seeing this escalation again. This was clearly abuse. And under the liberal constructions of the Domestic Violence Act, which the statute says should be liberally construed, Alyssa was a family or household member who was eligible for and should have been granted the order of protection. And the fact that Alyssa was subject to specific and joint abuse by Deanna against her specifically and against Matt together, but also Matt's, the history of Matt's abuse, the history of abuse of Matt by Deanna. The court's ruling was against the manifest weight of the evidence. It somehow seemed to understand there was abuse, there was harassment, but still couldn't get over this hump of this firefighter needing protection from his wife. We would ask that the court overturn and reverse the trial court's ruling. Thank you.